# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **CONNIE L. MORRIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **BESSEMER CITY BOARD OF** | ) | Case No. 2:19-cv-01231-AKK |
| **EDUCATION; and DR. KEITH** | ) | |
| **A. STEWART, individually and** | ) | |
| **in his official capacity as** | ) | |
| **Superintendent of the Bessemer** | ) | |
| **Board of Education,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Connie Morris used to be the Athletic Director for the Bessemer City School System.  Last year, at the recommendation of Dr. Keith Stewart, the former superintendent, the Bessemer City Board of Education abolished the Athletic Director position and transferred Morris to the middle school.  In response, Morris initiated this action claiming discrimination, retaliation, and a violation of due process.  The Board and Dr. Stewart move to dismiss these claims.  Docs. 18, 20. For the reasons explained below, these motions are due to be granted in part and denied in part.

I.

Morris has had a long and successful career working for the Bessemer City School System.[1] From 1993 until 2010, she served as the head coach of the varsity girls basketball team, where she amassed a record as the most winning girls basketball coach in the school's history. Doc. 11 at 3. For the next five years, she was a physical education teacher at Bessemer City High School, before she became the Athletic Director for the entire Bessemer City School System in 2015. *Id.*

As Athletic Director, Morris claims that the defendants paid her less than her male counterparts in similar positions. *Id.* at 5. Specifically, she says that the Director of Maintenance and Facilities and the Technology Coordinator, both of whom are male, are paid a higher salary than Morris. *Id.* Morris also raised the disparity issue in her previous lawsuit, *Morris IV*, which resulted in a settlement.

She also alleges that she was subjected to different terms and conditions as Athletic Director than her male predecessors. Doc. 11 at 5. For example, a few years into Morris' tenure as Athletic Director, there was an opening for the position of head football coach at Bessemer City High School. *Id.* at 6. School policy

---

[1] Her career has not been without controversy. She has sued the school board for gender discrimination on four prior occasions. *See Morris v. Bessemer City Bd. of Educ.*, No. 2:01-cv-01355-UWC (N.D. Ala. dismissed May 10, 2004) ("*Morris I*"); *Morris v. Bessemer City Bd. of Educ.*, No. 2:08-cv-01086-JHH, 2009 WL 10688079 (N.D. Ala. Nov. 5, 2009) ("*Morris II*"); *Morris v. Bessemer Bd. of Educ.*, No. 2:10-cv-02402-S, 2013 WL 549896 (N.D. Ala. Feb. 13, 2013) ("*Morris III*"); *Morris v. Bessemer City Bd. of Educ.*, 2:16-cv-00626-KOB (N.D. Ala. dismissed Jan. 17, 2018) ("*Morris IV*").

provides that the principal and the Athletic Director are responsible for making recommendations for open coaching positions to the superintendent, who then makes the final decision. *See id.* at 5. According to Morris, she and the principal both recommended one person for the position, but Stewart hired another. *Id.* at 6. Dr. Stewart later instructed his hand-selected coach to keep the principal informed, but not Morris. *See id.* When the coach proposed to Dr. Stewart hiring two individuals as assistant coaches, Dr. Stewart told the coach to run it past the principal first, but, again, not Morris. *Id.* at 7.

Later, Morris informed Dr. Stewart that the coach had been conducting practices in violation of the Alabama High School Athletic Association's ("AHSAA") rules. *Id.* at 8. Morris urged Dr. Stewart to self-report the violation to the AHSAA. *Id.* Dr. Stewart at first declined, until Morris repeated her plea a week or so later. *Id.* In response, the AHSAA placed the football team on probation (among other penalties), and the Board did not renew contracts for any of the football coaches. *Id.* at 8–9. Dr. Stewart then notified Morris and the principal that he alone would handle the interview process for the next head football coach. *Id.* at 9.

Morris argues that these actions—ignoring her recommendations, encouraging her subordinates to bypass her, and stripping her ability to participate in hiring decisions—were taken in retaliation for her prior litigation and/or because she is a woman.

3

Shortly after these events, Dr. Stewart sent a letter to Morris informing her that he planned to recommend to the Board that it abolish the Athletic Director position and transfer Morris to the position of "teacher/school athletic director at Bessemer City Middle School." *Id.* at 10. Morris requested a hearing before the Board to contest the recommendation. *Id.* at 11. The Board allowed Morris to make a statement, but did not permit her to present witnesses or to examine Dr. Stewart. *Id.* The Board accepted Dr. Stewart's recommendation and transferred Morris to her new position with the same pay and benefits. *Id.* at 10–11. Morris viewed the transfer as a demotion to an "elementary school teacher's position." *Id.* at 11.

Three weeks before the Board transferred Morris and abolished the Athletic Director position, the Board hired Andrew Zow, the former starting quarterback for the University of Alabama, as the new head football coach at Bessemer High School. *Id.* at 12. The Board also hired Thaddeus Fitzpatrick as the head coach for the men's basketball team. *Id.* Morris was not offered either position. *Id.* Nor was she offered a position in the Board's central office. *Id.*

On July 8, 2019, Morris filed a charge of gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), doc. 29-1, and received the right-to-sue notice five months later, doc. 29-2. In the interim, Morris filed this action. Doc. 1.

Morris asserts four counts: (1) gender discrimination in violation of Title VII,

42 U.S.C. § 2000e, and, pursuant to 42 U.S.C. § 1983, of her right to equal protection of the law under the Fourteenth Amendment, *id.* at 14; (2) age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, i*d.* at 15; (3) retaliation in violation of Title VII, *id.* at 16; and (4) pursuant to 42 U.S.C. § 1983, an alleged violation of her right to due process by failing to afford her a proper hearing when it transferred her to another position. *Id.*

To remedy these alleged injuries, Morris asks the court (1) to declare that the defendants' conduct violated Title VII and § 1983; (2) to "[p]ermanently enjoin the Defendants, their agents, employees, successors, and those in active concert or participation with them, from discriminating" or retaliating against her; (3) to award compensatory damages for "the embarrassment, humiliation, ridicule, disparagement, and other mental anguish she has suffered"; (4) to award punitive damages against Stewart in his individual capacity "for his willful conduct"; and (5) to award costs and a reasonable attorney's fee to Morris. Doc. 11 at 19.

The Board and Dr. Stewart move to dismiss Morris' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Docs. 18, 20.

II.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint fails "to state a claim upon which relief can be granted," the defendant may move to

5

dismiss it. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (citation omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018).

Furthermore, to establish discriminatory intent at the motion to dismiss stage, Massey does not have to allege a prima facie case under *McDonnel Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Instead, Massey need only "provide enough factual matter (taken as true) to suggest intentional [gender] discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citation omitted).

III.

A.

The Board and Dr. Stewart argue that all of Morris' claims under Title VII should be dismissed because she failed to satisfy the procedural prerequisites under

the statute. The defendants are correct that Morris filed her claims before she received her right-to-sue notice. But she now has the notice and even if the court dismisses her Title VII claims, she would have the opportunity to move to amend to replead them. Therefore, in lieu of dismissal, the court will afford Morris an opportunity to replead the claims in an amended complaint that references the right-to-sue notice.

But the Title VII claims against Dr. Stewart specifically are due to be dismissed for another reason. "The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (emphasis in original). Dr. Stewart may have been Morris' supervisor, but the Board was her employer. As a result, granting Morris an opportunity to replead as to Dr. Stewart would be futile. Consequently, her Title VII claims against Dr. Stewart are due to be dismissed.

B.

The Board and Dr. Stewart argue also that the ADEA claim should be dismissed for failure to satisfy the procedural prerequisites under the statute. The ADEA has a similar exhaustion requirement as Title VII. *See* 29 U.S.C. § 626(d)(1). The court cannot afford Morris an opportunity to amend this claim, however, because Morris' charge did not mention age discrimination. *See* doc. 29-1. A

"plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280 (citation omitted). Though "the scope of an EEOC [charge] should not be strictly interpreted," the judicial complaint must be reasonably related to the charge. *Id.* (citation omitted). In her charge, Morris checked the boxes for gender discrimination and retaliation, and she repeatedly described being discriminated against "due to my sex." Doc. 29-1. Morris did not check the box for age discrimination on the charge, and she made no allegations in the charge so much as suggesting age discrimination.[2] *Id.* The ADEA claim (Count II) is thus beyond the scope of the EEOC charge and is due to be dismissed.[3]

## C.

Morris claims that she was entitled to the protections of procedural due

---

[2] Allegations related to age discrimination are also missing from the complaint. The ADEA prohibits employers from discriminating against an employee who is at least 40 years old because of that employee's age. 29 U.S.C. § 623(a)(1), 631(a). To adequately state a claim under the ADEA and survive a motion to dismiss, a plaintiff must "provide enough factual matter to plausibly suggest intentional discrimination." *Buchanan v. Delta Air Lines, Inc.*, 727 Fed. App'x 639, 641 (11th Cir. 2018) (citing *Surtain v. Hamlin Terrace Found.*, 739 F.3d 1239, 1246 (11th Cir. 2015) (per curiam)). Morris does not allege any facts suggesting that age affected the decision not to offer her one of the coaching positions. She does not even allege that she is a member of the protected class. Her allegations add up to: "the Board hired a 40-year-old who is less qualified than me without offering me the position." That is plainly not enough. Thus, even if the ADEA claims were properly before the court, Morris falls far short of plausibly stating a claim of age discrimination.

[3] The ADEA claims are also due to be dismissed against Stewart specifically, because, like Title VII, ADEA claims must be brought against employers—there is no individual liability under the statute. *See Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996).

process before the Board abolished her position and Dr. Stewart transferred her to the middle school.[4]  Under the Fourteenth Amendment, procedural due process guarantees a "right to some kind of prior hearing" only when a protected property or liberty interest is implicated.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972).  The issue is whether a protected interest is implicated in this case.

1.

For a property interest to be protected, a person must have "a legitimate claim of entitlement it."  *Roth*, 408 U.S. at 577.  Property interests are created and defined, not by the Constitution, but by an "independent source" of law, "such as state law."  *Id.*  Accordingly, a person's property interest in employment could be created and defined by the terms of the employment contract, by the employer's policy, or by a state statute governing employment.  *Id.* at 578.

Here, the Alabama Code governs the employment of public-school officials. The statute says that tenured teachers may only be *terminated* for good cause.  Ala. Code § 16-24C-6(a).  In contrast, a teacher may be *transferred* "at any time as the needs of the employer require."  § 16-24C-7(a).  The transfer "must be without [a]

---

[4] Of course, the Board granted Morris a hearing of sorts when it permitted her to make a statement opposing the transfer.  Morris contends that she was entitled to more process than this, complaining that the Board denied her the opportunity to present witnesses or to question Stewart.  The Supreme Court has said that, even when procedural due process applies, a party is not always entitled to a "full evidentiary hearing."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). However, because the Board does not raise the issue of whether the hearing satisfied the requirements of due process, the court assumes that it did not.

9

reduction in compensation," and the teacher must be qualified for the new position, but otherwise the employer has unfettered discretion over when and whether to transfer teachers.[5] § 16-24C-7(c). Thus, an employee facing transfer is entitled to the same pay and to a position for which he or she is qualified, but so long as the employer complies with these conditions, the employee is not entitled to stay in the same position. *See* Ala. Code § 16-24C-4(3)(c) (providing that tenure does not "create or confer[] any enforceable right or protected interest in or to a specific position, rank, . . . assignment, [or] title").

The defendants complied with the terms of the statutes. The court thus concludes that Morris does not have a protected property interest in remaining in her former position when the statute gives the employer discretion over whether to transfer her. *Cf. Roth*, 408 U.S. at 567, 578 (holding that the plaintiff did not have a protected property interest in continued employment because the employer had "unfettered discretion" over whether to rehire the employee).

2.

The Supreme Court has said that the right to engage in common occupations is a protected liberty interest. *Roth*, 408 U.S. at 572. But it would stretch "the

---

[5] The statute also provides teachers facing transfer with some procedural protections. For example, the teacher must receive "written notice of the proposed transfer" and "must be afforded an opportunity to meet with" the board. § 16-24C-7(c). But these protections do not impose any restriction on the board's discretion.

Case 2:19-cv-01231-AKK   Document 31   Filed 04/22/20   Page 10 of 19

reduction in compensation," and the teacher must be qualified for the new position, but otherwise the employer has unfettered discretion over when and whether to transfer teachers.[5] § 16-24C-7(c). Thus, an employee facing transfer is entitled to the same pay and to a position for which he or she is qualified, but so long as the employer complies with these conditions, the employee is not entitled to stay in the same position. *See* Ala. Code § 16-24C-4(3)(c) (providing that tenure does not "create or confer[] any enforceable right or protected interest in or to a specific position, rank, . . . assignment, [or] title").

The defendants complied with the terms of the statutes. The court thus concludes that Morris does not have a protected property interest in remaining in her former position when the statute gives the employer discretion over whether to transfer her. *Cf. Roth*, 408 U.S. at 567, 578 (holding that the plaintiff did not have a protected property interest in continued employment because the employer had "unfettered discretion" over whether to rehire the employee).

2.

The Supreme Court has said that the right to engage in common occupations is a protected liberty interest. *Roth*, 408 U.S. at 572. But it would stretch "the

---

[5] The statute also provides teachers facing transfer with some procedural protections. For example, the teacher must receive "written notice of the proposed transfer" and "must be afforded an opportunity to meet with" the board. § 16-24C-7(c). But these protections do not impose any restriction on the board's discretion.

concept too far to suggest that a person is deprived of liberty when he simply [loses] one job but remains as free as before to seek another." *Id.* at 575. Instead, to implicate the liberty interest, the public employer must obstruct a person's "freedom to take advantage of other employment opportunities." *Id.* at 573. One way the public employer could do this is by defaming the "person's good name, reputation, honor, or integrity." *Id.* In that event, the person would be entitled to "an opportunity to refute the charge" for the purpose of clearing his name. *Id.* at 573 & n.12.

Alleging that a public employer deprived a person of liberty by discharging and defaming him is referred to as a stigma-plus claim. That is what Morris alleges in this case. To establish a stigma-plus claim, the employee must prove that:

> (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) was made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing.

*Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

Morris has failed to allege a protected liberty interest. First, she does not allege that the Board or Dr. Stewart made a false, stigmatizing charge against her. A person is not deprived of liberty if there is no charge against the employee "that might seriously damage his standing" in the community, such as that he is "guilty of dishonesty or immorality." *Roth*, 408 U.S. at 573. For the same reason, a protected liberty interest is not implicated by "the discharge of a public employee whose

11

position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge." *Bishop v. Wood*, 426 U.S. 341, 348 (1976). In short, if no charge against the employee is made, and the charge is not made public, the employee's reputation is not harmed in such a way that it forecloses his or her freedom to pursue other employment.[6]

Moreover, Morris was not discharged—she was transferred to another position. The Eleventh Circuit has explicitly held, and reaffirmed, that "a 'discharge or more' is required in order to satisfy the 'plus' element of the stigma-plus test." *Cannon*, 250 F.3d at 1303 (quoting *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1486 (11th Cir. 1992). "A transfer or a missed promotion is not enough." *Id.*

The court thus finds that the defendants did not violate a protected liberty interest when they transferred Morris to another position without making any charge against her. Because Morris does not allege a protected property or liberty interest, her due process claim (Count IV) is due to be dismissed.

D.

Morris seeks relief via § 1983 for alleged gender discrimination. Section 1983

---

[6] Morris attempts to overcome this settled law by alleging that the mere fact of the discharge (or demotion) harms the employee's reputation. But the Supreme Court has rejected this contention: "Mere proof" that non-retention in one job would make an employee "somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of liberty." *Roth*, 408 U.S. at 574 n.13. In other words, the implied stigma incident to most, if not all, terminations is not enough. Otherwise, the law would require public employers to hold a hearing before discharging every employee.

12

creates a cause of action against state and local officials who violate federal rights.[7] In this case, the federal right asserted is the "constitutional right" under the equal protection clause "to be free from unlawful sex discrimination and sexual harassment in public employment." *Cross v. State of Ala., State Dep't of Mental Health*, 49 F.3d 1490, 1507 (11th Cir. 1995). Specifically, Morris alleges that the Board and Dr. Stewart discriminated against her on the basis of sex in four ways: (1) by paying her less than male employees; (2) by subjecting her to different terms and conditions than her male predecessors, thus creating a hostile work environment;[8] (3) by abolishing her position and demoting her because of her gender; and (4) by failing to promote her to two vacant coaching positions because of her gender.

As an initial matter, Morris sues Dr. Stewart in both his individual and official capacities. The claims against Stewart in his official capacity are redundant. When a plaintiff sues a government official in his or her official capacity, "the suit is simply another way of pleading an action against [the] entity of which [the official] is an agent." *Busby*, 931 F.2d at 776 (citation omitted). Since the claims against Dr.

---

[7] Section 1983 of Title 42 of the U.S. Code states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

[8] Neither the Board nor Dr. Stewart makes any argument for why the hostile-work-environment claim should be dismissed. This claim thus survives the defendants' motion to dismiss.

Stewart in his official capacity are "functionally equivalent" to the claims against the Board, the claims against Dr. Stewart in his official capacity are due to be dismissed. *Id.* Thus, only the individual capacity claims against Dr. Stewart remain.

1.

Morris alleges that she was paid less as Athletic Director than similarly situated male counterparts. As examples, she identifies two male employees who make a higher salary: the Director of Maintenance and Facilities, and the Technology Coordinator. Doc. 11 at 5.

Dr. Stewart argues that the unequal pay claim should be dismissed against him specifically because he had nothing to do with Morris' compensation. Under the Alabama Code, the Board "shall fix the salaries of all employees." § 16-11-17. The superintendent has no role in determining the compensation of employees such as Morris. Consequently, Dr. Stewart could not be responsible for any alleged gender disparity in Morris' pay. Because Morris has not alleged that Dr. Stewart caused her allegedly unequal pay, this claim is due to be dismissed against Dr. Stewart.

For its part, the Board argues that Morris is equitably estopped from asserting the unequal pay claim, because Morris settled the same claim in her previous lawsuit, *Morris IV*. Doc. 19 at 12. Equitable estoppel "provides relief for parties who have been induced into behavior through another party's false representation." *In re Atlanta Retail, Inc.*, 456 F.3d 1277, 1291 (11th Cir. 2006). The doctrine has five

elements:

> (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*Busby v. FRHBW Realty, Inc.*, 513 F.3d 1314, 1326 (11th Cir. 2008) (citation omitted). But the Board does not argue that Morris made a false representation. Instead, the Board's argument is that the earlier settlement should have preclusive effect. The court thus looks to the ordinary rules of res judicata.

Generally, there must be a judgment to invoke res judicata. 18A Wright & Miller, Fed. Pract. & Proc. § 4443 (3d ed. 2008). A settlement agreement is simply a contract. *In re Home Depot Inc.*, 931 F.3d 1065, 1080 (11th Cir. 2019). But after the parties reached a settlement agreement, the court, with the parties' consent, entered a judgment of dismissal with prejudice. *Morris v. Bessemer City Bd. of Educ.*, 2:16-cv-00626-KOB (N.D. Ala. dismissed Jan. 17, 2018). The question thus becomes, what is the preclusive effect of a consent judgment.[9]

The preclusive effect of a consent judgment is determined by the intent of the parties. *See Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288–89 (11th

---

[9] Consent judgments can result in claim preclusion, but they cannot result in issue preclusion, since the issues have not been actually litigated. *Arizona v. California*, 530 U.S. 392, 414 (2000).

Cir. 2004). This is so because a consent judgment "receives its legitimizing force from the fact that the parties consented to it." *Id.* at 1288. "The best evidence" of the parties' intent "is, of course, the settlement agreement itself." *Id.* at 1289. Thus, the preclusive effect of the consent judgment should be determined by the terms of the settlement agreement, rather than "by the claims specified in the original complaint." *Id.*

Here, the Board has not provided the court with the terms of the settlement agreement. Consequently, the court cannot say whether the parties intended to preclude the unequal pay claim. The party asserting preclusion bears the burden of proving its elements. *Taylor v. Sturgell*, 553 U.S. 880, 907 (11th Cir. 2008). Therefore, in the absence of the information the court needs to decide this issue, the unequal pay claim survives the motion to dismiss. But the Board is free to raise the issue again at the summary judgment stage.

2.

Morris claims that gender bias motivated the decision to abolish the Athletic Director position and to transfer her to a position at the middle school. The Board makes no argument for why the demotion claim should be dismissed. The claim thus survives against the Board. For his part, Dr. Stewart responds that only the Board had the authority to abolish the Athletic Director position, so "only the Board can provide the relief that [Morris] seeks." Doc. 20 at 9.

But as alleged, Dr. Stewart's role in these events was more significant than he admits. Though Dr. Stewart is correct that the Board made the final decision, it abolished the position of Athletic Director allegedly based on Dr. Stewart's recommendation. Additionally, the Alabama Code vests the power to transfer school employees with the superintendent. § 16-12-16 ("The city superintendent of schools . . . shall transfer [all employees of the board] as the needs of the schools require."). Thus, it would appear that Dr. Stewart must have made the decision to transfer Morris to the middle school position. As such, he allegedly caused the injury that Morris pleads.

Dr. Stewart's argument that dismissal is warranted because he cannot provide the relief that Morris seeks is unavailing. First of all, "even if [the plaintiff] is seeking relief to which he's not entitled, this would not justify dismissal of the suit." *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002). Moreover, Morris requests relief that that court could grant. Though the court may not be able to order Dr. Stewart to reinstate Morris as Athletic Director, she requests other relief as well. She asks for a declaratory judgment that Dr. Stewart violated her rights by demoting her, compensatory damages for her mental anguish, and punitive damages against Stewart. Doc. 11 at 19. Dr. Stewart does not argue that the court could not grant these requests. Accordingly, the demotion claim against Dr. Stewart survives the motion to dismiss as well. To the extent that Morris prevails, the court will then

ascertain the proper relief she is entitled to against Dr. Stewart and will reject any that in fact cannot be granted.

3.

Morris claims that the defendants refused to offer her the vacant positions of head football coach or head basketball coach because of her gender. The defendants argue this failure-to-promote claim should be dismissed because Morris failed to allege (1) that she applied for or expressed interest in the positions, doc. 19 at 3 n.5; (2) that she is in fact more qualified than the candidates the Board hired, *id.* at 5; and (3) that Andrew Zow is a similarly situated comparator to Morris, *id.* at 6. Essentially, the Board argues that Morris failed to allege a prima facie case.[10]

The defects pointed out by the Board would indeed be fatal to Morris' claim at the summary judgment stage. But at the motion to dismiss stage, Morris need not allege a prima facie case under the *McDonnell Douglas* framework. *Surtain*, 789 F.3d at 1245. Instead, Morris simply must allege facts plausibly suggesting intentional gender discrimination. *Id.* At this stage of the litigation, Morris has done

---

[10] To establish a prima facie case for a failure-to-promote claim, the plaintiff must demonstrate that:

> (i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class.

*Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).

so.  Therefore, the failure-to-promote claim survives for now.

IV.

To close, the ADEA and due process claims are due to be dismissed against both defendants in their entirety.  The Title VII claims against Dr. Stewart is also due to be dismissed.  The Title VII claims against the Board may proceed subject to an amended complaint that adds language related to the right-to-sue notice.  The equal protection claims are resolved as follows: all claims brought against Dr. Stewart in his official capacity are due to be dismissed as redundant; the unequal pay claim is due to be dismissed against Dr. Stewart, but survives against the Board; the hostile-work-environment claim, the demotion claim, and the failure-to-promote claim survive against both defendants.  A separate order will be entered.

**DONE** the 22nd day of April, 2020.

　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　**ABDUL K. KALLON**
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE